The next case for argument, Karen M. Suber v. VVP Services, LLC, Vision Venture Good morning, your honors. May it please the court. My name is Karen Suber, and I am representing the plaintiff appellant. I am also the plaintiff appellant, so I will be speaking about myself in the third person. I would like to frame one of the principal questions, or frame my with one of the principal questions that was before the district court, and that is, does the New York long-arm statute reach non-domiciliaries who coordinate and conspire with agents in New York to effect a multi-jurisdictional fraudulent enterprise to defraud New York investors and, in so doing, use a New York lawyer and the legal work products created by that New York lawyer to effect the fraud upon New York investors and in furtherance of those non-domiciliaries fraudulent enterprise, and in the process of so defrauding the New York investors, effects harm damages not only upon those New York investors, but also upon the New York lawyer. I submit to you that the district... Counselor, one of the things, the phrase New York lawyer comes up a lot in the briefing, and I'm trying to understand what New York lawyer means in this context. Does it mean a lawyer who resides in New York? Does it mean a lawyer who's barred in New York and resides anywhere? What does New York lawyer mean? Your honor, for these purposes, New York lawyer means a lawyer who is barred and licensed under the laws of the state of New York. So if there's a lawyer who lives in Kansas, but is barred in New York and is retained to do work on something that touches New York, that person is a New York lawyer for the purpose of our personal jurisdiction analysis. Yes, your honor, that lawyer is. Thank you. Isn't the question really, what the district court anyway thought the question was, is whether any or all of the causes of action in the complaint arise from the kinds of transactions or torts that are the basis of the New York long arm statute. And certainly, if one of the defrauded victims was bringing a case for being defrauded by actions taken to solicit investments from New York residents, there would be jurisdiction. But why does that have anything to do with, for example, the lawyers not getting equity participation in the fraudulent corporations as had been promised to her? Or what does that have to do with whether there was racial or sexual or other harassment of the lawyers during the course of her employment in California? What is the fact that somebody defrauded the New York Yankees have to do with those claims, for example? Your honor, with respect to the question that you asked, it's because the work products of the New York barred lawyer were used as part of the enterprise, the conspiratorial enterprise, as well as the conducts. The question is, the New York long arm statute is rather specific. It says that New York has jurisdiction over claims that arise from certain kinds of actions. And I think that's interpreted moderately broadly, at least that there has to be some nexus. But I'm not sure what the nexus is to the employer engaging in acts of corruption. Acts of discrimination against an employee in California, just because some of that employee's work happens to touch on a fraud that the employer is committing against somebody else in New York. Help me out with that. If we could take a step back, though, and look at the New York long arm statute and its two prongs. We have transacting business, right? And the New York, the district court only held that, or only found that Sklavos and Reisata transacted business in New York. Yet that was not consistent with legal precedent. When you look at... I'm sorry, the court found that they transacted business. But they found, they did not find that VVP or VVPS, so vision venture partners, or vision with both Crutter and CPC International. I don't see, I don't understand any of that. Because the court, district court assumed that the transacting business test was met. Didn't distinguish among defendants and say, oh, there's jurisdiction over this one and not jurisdiction over that one. But yes, your honor, yes, your honor. Excuse me, excuse me, let me ask the question. I apologize. What the district court said was these causes of action do not arise from that transaction of business. Now, it's, I think the law is very clear that this is a claim by claim analysis. And I'm, you know, I think we have to go through claim by claim. Maybe some of the claims there's one answer and some there's another. But in particular with the employment related claims, what is the connection between, for example, a breach of a contractual promise to give equity participation and the fact that the people who made that promise are defrauding investors by making false representations about what business they're trying to do or whatever those false representations even are. What is the connection? Let me, if I may, your honor, address that in two parts. One, the district court actually did make a distinction in terms of who had transacted business, which defendants had transacted business in New York and which had not. They said that Reisata and Skavos had. And for example, the employer, VVVS. But, excuse me, what difference does it make if the court also found that the claims do not arise from any of that transaction of business? I would like you to tell me what the connection is. Your honor, I was only using that as a groundwork. Good. So let's get to what, now that the groundwork is laid, tell me the answer to the question. Absolutely. And so let's look at wrongful termination, for example. The wrongful termination, which via constructive discharge, which required the New York barred attorney to resign under Rule 1.16 of the New York Rules of Professional Conduct, the district court found that that VVP and VVPS had not transacted business in New York, when in fact, they had. So when we look at that. But we're still, that claim is a claim under California law, is it not, the wrongful termination claim? Yes, your honor, but it's a- Unfortunately, last I heard, New York does not have a wrongful termination claim or tort, right? It's an employment at will state. You're right, your honor. It does arise under California law. But ultimately, when we look at the jurisdictional analysis, only one element of a claim need arise. Leachy tells us that only one element of a claim need arise in a jurisdiction. And New York is a permissive jurisdiction in terms of the spectrum of relatedness to the jurisdiction. The contacts with the state and the causes of action. So it's not that, we know from Ford and from Crutter and from CPC International that it's not a but-for causation, right? But those are cases about the Constitution. And in fact, New York specifically is not a broad long-arm state in the way that California is. California's long-arm statute says we'll have jurisdiction whenever the Constitution permits. New York is clearly not in that game. With all due respect, I think when you look at the new jurisprudence post-Ford, including English v. Avon products, they use in the arising under component of the long-arm analysis, they use a direct reference to Ford. And so I would submit to the Court and to Your Honor that it actually is permissive. And I can't speak to its comparison to California as you can, but I believe that the precedent suggests that. And I would say, to Your Honor's point, if in fact this is a more, California's a more appropriate forum, then plaintiff respectfully submits that under Thacker Dean and Cork that this matter be transferred to the Central District of California, a jurisdiction that appellees themselves cite in their briefs 72 times. And that is tantamount to an admission. And I guess, Your Honor, I would like to just ask, have your questions, have I adequately addressed your questions as it relates to the arising under prong? Because I know that you've probed... Well, you've answered, you've stated your position. I think I understand your position. What I would like to read, what I would like to emphasize is that all of the causes of action were part of the contacts with New York and the same misrepresentations that were made to plaintiff were also made to the New York investors as part of the defrauding of those investors by the appellees. That should be a sufficient nexus, an articulable nexus to... Why is that? I'm sorry, just to jump in for a second. The fact that there are misrepresentations to the plaintiff in California, resulting in the alleged harm in California, and that there are also the same misrepresentations to people in New York who are defrauded and suffered whatever harm they have, I don't understand why. I mean, I don't understand how that relates enough to bring the plaintiff's claim, how that constitutes a contact in New York that's relevant. The fact that there's multiple harms, but the harm that's determining jurisdiction here is the harm to the plaintiff. Absolutely, Your Honor. That said, the plaintiff, as part of the contact with New York by Vision Venture Partner Services, that contact with investors also made those same misrepresentations at the direction of appellees, so appellees being Risada, Sclavos, VVP, and VVP Services. So they really are part and parcel of the same enterprise, the same fraudulent enterprise, and that is how the New York lawyer was used in furtherance of the fraudulent intent of the appellees. May I ask a question about subject matter jurisdiction? This case is premised on diversity jurisdiction? Yes, Your Honor. Is there any allegation in the complaint about who the members of VVP Services LLC are? At the time of the filing of the complaint, the sole member of VVP Services LLC was VVP, so Vision Venture Partners. Then going up from there, the sole partners were natural persons. Those three natural, I'm sorry, they were entities, and those three members were 11 Stones LLP, a Florida limited partnership. Then there was Prometheus Ventures LLC, which was a California LLC. Then there was 1744 Ventures, which was, I believe, a Colorado LLC. But if they're LLCs, that's not the same thing as a corporation, is it? That's more in the nature of a partnership? Do we have to know who the members of each of these LLCs were and what their citizenship was? Yes, Your Honor. The jurisdictional analysis does require going all the way back to the individuals, but I'm happy to do that. So for example, 11 Stones, again, as at the time of filing, had a limited and general partner, both domiciled in Florida, and then they were limited. The sole natural person member of 1744 Ventures LLC was Rick Fox, and Prometheus Ventures LLC, as has been briefed here, the sole member was a natural person, California resident. Okay. You've obviously thought about this, so it's good. I'm just trying to ... Is any of that in the complaint, though, to identify? Absolutely, Your Honor. I assure you, and this is the one thing that I would ask ... Well, we can look. I'm just trying to understand what the diversity situation is. Absolutely. At the time that this was filed, 100%, we did the jurisdictional analysis to make sure, going all the way upstream, that there was complete diversity on both sides of the V. There's no New Yorkers involved on the other side of the V, in other words? No, Your Honor, and I ... No, Your Honor, there are not. Okay, fair enough. I just was concerned about it. Thank you. Absolutely. Just one additional point in terms of the ... The district court did make errors in both the logical analysis and the application of some of the law, as well as the recitation of the facts. I recognize that I am over time, and I rest on my wreaths until the rebuttal. Thank you. May it please the court, my name is Paul Batista, and I represent the appellees in this case who are also the defendants below before the district court. I want to make a brief opening statement and focus on two of what we think are important points, and of course, answer any questions that the panel has of me. There's no question that Ms. Suber is a sophisticated lawyer and sophisticated plaintiff, by all measures. However, district court gave her not one chance to amend her complaint, not two chances, but three chances to amend her complaint, leading to a second amended complaint. To me, what is a fairly straightforward, at least clear, in my view, New York long-arm statute would make a prima facie case of personal jurisdiction. Now, we had moved to dismiss also for failure to state a claim. That's not been decided by the district court, just the jurisdictional issue. To answer your question, Judge, all of the upstream natural persons are outside of the state of New York. Whether it's alleged in there or not, we don't dispute that. Just to correct that for you. The district court took 183 paragraph complaint, 84 pages long and 42 exhibits, and distilled it down to two connections to New York. One was VVP services hiring a recruiter, and two was Mr. Sklavos and Mr. Vizzotto engaging in the solicitation of investments in New York. And Mr. Vizzotto, through agents, not even individually. And you're correct. She did a cause of action by cause of action analysis as to whether those two connections, which were the only two that she found throughout that entire complaint that tied to New York, the claims arose out of either one of those two connections. And she went through every single claim. So let me focus then on the... Some of the claims are inducement related. They have to do with not what happened once she was an employee there, but the act of inviting her to leave. Nice job in New York to go be there. And one of the allegations, at least, is that the agents hired by the defendants to recruit her misrepresented to her that the principals had the available capital at their disposal to invest in the e-sports, entertainment, hospitality, et cetera. And that that was an important part of the inducement to accept the job and to travel. Why isn't that enough of a contact, at least as to the inducement related claims? So the direct answer is because that was done allegedly in the complaint, taking it as true, by the recruiter, not by anybody for the defendants. The recruiter, Crossdale Paul, I think was the name, contacted Ms. Suber and said, I have an opportunity for you in California. There was one phone call between Mr. David Diamond, who was the then in-house counsel for VPP Services, and Ms. Suber, in which he invited her to California for interviews. In those interviews in California, those representations were made. There's lengthy allegations about Mr. Rosada and others. But you can't infer that... I mean, it's hard for me to imagine the recruiters would invent that representation on their own. Weren't they speaking on behalf of the principals in California when they said to her in New York, they've got the resources, et cetera? Well, the recruiter... I'm going to come back to this court's decision in Yee v. Taiwan Semiconductor, which you all... The Second Circuit said that that limited communication between an out-of-state defendant, even if it's through the recruiter and the plaintiff in New York, when it's discussing services to be provided outside of the state of New York, is not a sufficient connection. That's, I think, my best answer to your question. Your case says exactly that. And that was in the context of a recruiter. So it wasn't like the recruiter called Ms. Suber and said, I have work for you in New York, or I want to hire you to work for a New York firm. There's an opportunity in California for you to go there to work in California, to represent a company in California, and to relocate to California. And could you talk a little bit on the claims that sort of are anchored to the fundraising in New York from investors? One of the arguments that we're hearing is, well, they relied on the fact of their counsel's New York bar admission to aid them in that endeavor. And therefore, that gives counsel who had the New York bar admission an injury arising from that work. And Judge Nathan D'Ambelo dealt with that exactly, and said the only claim that ties to Ms. Suber's work product, working in California, that she alleges was used, allegedly improperly, by the defendants to commit fraud in New York. That's her only connection. I did work for these entities that was then used, unbeknownst to me, to commit a fraud in New York. The only claim that ties to, even remotely, and I think that was the district court's comment, if deemed any remote connection, would be the wrongful termination clause, which, as you observed, is a California cause of action. And in California, only the employer can be accused of or be determined to be liable for wrongful termination. The only employer here was VVP Services. That's it. And VVP Services, per the district court, was not part of that solicitation of investments. Right. And isn't that a little bit the discussion that we heard your counterpart having in the earlier discussion, that if this was a conspiracy that involved them all, that VVP Services ought to be accountable for and imputed to have been participating in New York as well? Yes, except that's not what the Second Amendment complaint says. There are no allegations of conspiracy. There's just a broad conclusion of a civil conspiracy in the Second Amendment complaint. And what's more, a conspiracy, obviously, is a tort that does not equate to a business transaction under 302A1, which is what we're talking about. The allegations of fraud, the connection for a business transaction, in New York, the district court found was a business transaction. May I just ask, I'm a little puzzled by the relevance of the fact that Ms. Zuber is licensed in New York. The work that she's doing is, except for the first few weeks before she moved, was done in California for a California company. Nothing wrong with that, as I understand it, under California law and under most states law, an in-house counsel, so long as they're licensed somewhere, can provide services to their legal services to their employer. But whether she's a New York lawyer or a Kansas lawyer or a California lawyer, I'm not sure. There's no allegation that someone's representing, hey, this was all checked out by a New York lawyer, so we're golden, or anything like that. Her New York lawyer, I'm not sure what that has to do with anything. And I agree with you 100 percent, and the complaint doesn't say otherwise. And that's what you have to accept what's in the complaint. Back to the conspiracy point. So Ms. Zuber alleges conspiracy upon information and belief. You can't be citing cases, you can't do that. You need to say who was conspiring with who, what meetings occurred, what conversations occurred, and you have to do it on a defendant-by-defendant basis. The district court found there were no allegations of a conspiracy, even if it would constitute a business transaction on a 302A1, and it does not, because that's not a business transaction, it's a toy. I hope I answered your question. I can tell you to take it a step further in terms of the colloquy with Ms. Zuber a little while ago. After the fact, in her brief, she now comes up with the argument that Sklavos and Rosada were employees of VVP Services, and because of that, VVP Services is liable under respondeat superior theory for what they did in New York. That's no place in the complaint. There is no respondeat superior claim against VVP Services saying that they are liable for what Sklavos and Rosada did when they were in New York. That's not in that but only in connection with the representations or misrepresentations that were alleged to be made as part of the inducement, not as part of the alleged fraud in New York. So Ms. Zuber tries to back and fill in her brief to correct that problem, but that was not in the second amended complaint and was not something that Judge Nathan or the district court had to deal with because it wasn't in there. Do we have the discretion in your view to conclude that you're right on the merits but then transfer the case? Thank you for that. That was one of my two important points I wanted to bring to the court's attention. So I do agree that the case law says you do have discretion. It's what's in the best interest of justice. I understand that. What is missing from the briefing is that there was never a request allowed by Ms. Zuber to transfer this case any place, California or any place, before the district court. There is a reference in the briefing to a motion that Ms. Zuber filed after the dismissal order was entered to reconsider that dismissal order under Rule 59A in which she asked the district court at that point in time, post dismissal order on reconsideration to transfer the case to California. When the briefing was completed, the district court had not entered an order on that Rule 59E transfer of case to California question. In June of this year, the district court entered an order on that motion for reconsideration and denied it and specifically went through the factors why the district court did not think it was in the interest of justice in this case to transfer that case to California. So my question is do we have the discretion to do that on our own or do we have to essentially conclude that the district court abused its discretion in the context of its motion, denial of motion for reconsideration, in order to bring about that relief? So I would answer that question this way. That order was entered in June of 2022 at court paper 153 below. It was not appealed. It is not an order that's been appealed to this court. It is now a final order before the district court. So I don't think you have the ability to reconsider or to overturn an order that's not been appealed before you. Well that's and I guess so I'm being an artful and framing it. I'm trying to figure out whether our authority to do that requires that we do it in the context of reviewing an order of the district court and concluding that the district court abused its discretion, independent of that, to order that relief. Essentially as a response to a request to us. I understand and I don't have the direct answer to that question. I'm not sure I've looked at that question. All I can tell you is that there's another order that addresses that exact issue, denies it, that's now final. How that fits into the mix, I respectfully don't have the answer to that. But I do know the order is final and has not been appealed. Can I ask a different sort of lateral question? Yes. But it is raised in the appellant's brief about the sealing of certain documents as I think we're talking only about eight specific documents that the plaintiff would like to have unsealed. And I'm trying to figure out like why you know there's a reference to attorney client privilege that might apply to some of these things or attorney work product. But there are a letter from the Boies Shiller law firm to some or all of the defendants which is a sort of negotiation document. And maybe that's a reason why it should be confidential. But I'm not sure there's a privilege there. The district court kind of back of the hand did this. I'm just trying to figure out what is the basis for keeping some of these records which were submitted to the district court in connection with a motion. These aren't just discovery documents. What makes them sealable? What makes them confidential? The only ones that we're concerned about are the attorney client privilege documents. Those are the ones that we ask to have sealed. And so based on the attorney client privilege, we don't want those documents in the public record. And I think the district court properly said those can be sealed. I think I do agree that at that point the district court just said just a clear spot. We're going to seal them all just so we avoid the issue. Well there are I mean if there are certain documents I'm looking at the document 55 from the district court docket notice of filing under seal and forthcoming motion to unseal which seems to be about eight documents that the plaintiff put into the record. This is different than anything that you put in. And if I'm not mistaken we'll hear from Ms. Stuber. Those are the documents that are in dispute. If there are any of those that you do not think need to be sealed could you just let us know that by letter? Of course Judge. I wish I could do it now from memory but I can't. It is not a big subject of the briefing but you know I'm always sensitive to the fact that there's a right of access to judicial documents that has to be countermanded with respect to at least some of these. And I'm just whatever we would decide about anything that is in dispute if there are things that aren't in dispute that would be. Yes sir we can we will certainly take care of that. I think the only things we're going to be concerned about the attorney client privilege documents. I'll look at that exhibit and see which ones are which ones and we'll report to the court in a letter. I know I'm over my time and I apologize if any questions for me I'll sit down. Thank you so much for your time today. Thank you. May it please the court again. I would like to start off with something that attorney Batista mentioned and that's the plaintiff did not plead that Sklavos or Rizada were employees of VVP services. That's not correct. If you look at and I apologize if you look at paragraph 14 of the second amended complaint Mr. Rizada continues to be an officer an employee of Vision Venture Partners and VVP services with compensation taking the form of cash and perquisites. Similarly in paragraph 16 of the second amended complaint Stratton Sklavos is an officer and employee of Vision Venture Partners and VVP services with compensation taking the form of both cash and perquisites. Then I would like to turn the court's attention to paragraph 20 which speaks to pleadings around VVP services and it transacting business in New York. Defendants Rizada and Sklavos with and through the four entity defendants meaning and including VVP and VVPS and the employees and agents thereof marketed, offered, sold, and distributed private unregistered securities so they too transacted business. And just as an indication of the court's error here I would like to call the court's attention to a particular section or sentence in the district court's opinion which states plaintiff has not demonstrated that VVP services engaged in a business transaction of any kind and I use that as an example of the district court's misrecitation. Again why is that relevant? If the district court was wrong and I think it may well have been to suggest that somehow it should be inferred that these were only telephone contacts when interpreting the complaint in the light most favorable to the plaintiff it seemed like there was an allegation of meetings so okay but still at the end of the day the judge said yeah but I agree that there were transactions of business in New York so why does this error make any difference whatsoever to the real question here which is the nexus issue which you know you've addressed. Your honor you're absolutely correct what I was intending to do is speak to exactly what Mr. Batista misstated that the second amended complaint did not contain allegations about or Slavos being employees or VVP services transacting business here so he was saying that essentially plaintiff had bootstrapped or there was a phrase he used to suggest that the respondeat superior briefing in the brief appellant's brief was not appropriate when in fact it is though when you look at Crutter and CPC International you don't even have to get to the nexus your honor I will rest on the briefs with one additional note in that as it relates to this court this court can transfer in civil rights cases appellate courts have the ability to transfer independently and this comes per gold lower and it's SCOTUS decision from I believe 1964 we are happy to brief your honor your honors or the court on that particular matter is there a particular reason why that was not the denial below was not appealed the denial as it relates to transfer yes we the the transfer was before this court at the same time so there was concurrent jurisdiction of the appellate court and the district court so I believe the jurisdiction of the appellate court trumps the jurisdiction of the district court as it relates to ordering on what is then on appeal so the district court or I'm sorry this court of appeals has jurisdiction over that matter right okay I mean I think I understand that the first part of the argument you made regarding our ability to still at this point transfer but I was thinking more with respect to filing something sort of noticing an appeal of the what was in the in front of the district court but I think I understand your your point and then one other item your honor as it relates to the seal your honors as it relates to the sealing of the exhibits this is not about the sealing of exhibits at all and in fact I would that they all can remain sealed subject to a third party motioning the court this is okay well then why I mean I only raised the issue because I thought that was one of the points in your brief was that this these documents should all be unsealed so I thought that was something that we would have to decide no it wasn't very thoroughly briefed I'm trying to figure it out but if you don't want the documents unsealed I don't think if that's not a form of relief that you're asking us to provide then there's no issue there is a different form of relief that plaintiff is asking you to provide with respect to the disputed exhibits and that is when you look at there's a certain excerpt that is briefed in appellants brief and it relates to the treatment of those disputed sealed exhibits the district court by misapplying the legal framework as it were to judicial documents she said some of those sealed documents were judicial documents some were not and then those that were excuse me I had the question is much simpler can you just tell me because I thought you just said something that would be very nice for me that we don't have to decide this because you're not asking that they be unsealed and if some third party you know the they can litigate that and they're not bound obviously by anything that happened between you and the appellees fine if you if you are asking that some documents be unsealed just let us know that if you if you're not asking that then it doesn't really matter whether the district court got it right or wrong we're not sua sponte going around trying to figure out what the district court did right or wrong unless you're asking us to do so which I thought you were and you're entitled to if that's what you want is your real concern here that you'd like us to take a look at the conclusion that you had to establish the crime fraud exception because you're worried about it being used in a preclusive way in another litigation that's exactly it your honor thank you the defendants have commenced a collateral confidential proceeding based on the excerpt that is wrongfully decided by the that was wrongfully the notion that everything that was sealed did not rise to the level of meeting the crime fraud exception and so given there are eight or ten I thought there were ten sealed judicial I'm sorry ten sealed documents some of which are judicial some are which are not given the lack of specificity of the district court defendants now have the right to use any one of those sealed documents which we don't know whether or not is a judicial document with in that collateral proceeding and say in this case plaintiff did not meet the crime fraud exception for disclosure that we resolve that claim in a way that undermine any assertion that the court's finding on that subject had preclusive effect you'd be happy I'm sorry if we resolved the sealing issue by not actually unsealing anything but resolving in a way that made it clear that that finding didn't have preclusive effect because we weren't reviewing it on the merits would you be satisfied your honor I do think that is one way to resolve the issue I also I think the better approach is to send the matter down for um remand it to the district court for further action as it relates to those documents because it is not clear and I think this goes to the the rushed nature of the opinion and we've briefed that issue as well as it relates to the civil justice reform act of 1990 we believe it was rushed because of the six months motion pending deadline please really you think I mean you think that's something that uh an appellate court is going to say is that a district court judge did sloppy opinion in order to get something off the six month list do you know how many judges are on the six month list for how many cases and no one cares that's not that's not what's going on uh it just seems to me this is uh and sort of ad feminem attack on the judge that has no nothing really to do with the merits of this case the judge either got something right or she got it wrong and whether the you know we we don't inquire into whether the judge spent 10 hours on it or should have spent 20 hours on it or should have held it for another five weeks and passed the six month list the question is the merits of the orders of the district court that's what we're dealing with your honor this has nothing to do with the honorable now you know justice okay what charge it is it doesn't matter who it is she's not talking about that the question is was it right or wrong if it's wrong we will correct it if it's right we will affirm it but we're not it's not about the rushed nature of anything it's about is it right or is it wrong that's what we're here to review i appreciate your message and i do respectfully submit the data analysis that we submitted in the briefing that indicates what happens to proceedings at the district court level in the last weeks prior to the deadline for that six month motion pending list and i say that with all due respect as much as i can but why isn't that even appropriate i mean congress says they want these things to be resolved within a certain time period seems to me it's a good thing for a judge to try to comply with that if it's possible to do so if doing so results in an error then it's an error and it gets fixed or should be fixed by the court of appeals and that's independent of whether it was the opinion was written in a hurry or was written at great leisure or was written on the beach at waikiki we review the merits of the rulings that were made and and just to get back i mean how how do we make a decision about whether something that the district court did is preclusive in another case isn't that for the judge in the case in which someone seeks to argue preclusion and then it either meets the requirements for collateral estoppel or issue preclusion or it doesn't but can we sort of ex ante tell another court what is going to whether collateral estoppel will apply or not but that's not what you're doing you're ex post correcting a wrong at the district court level the district court made conclusions for which there are not factual underpinnings that is to say vis-a-vis no defendant is there a finding that there was a attorney client relationship between the plaintiff and any of the defendants and so if you don't have that whether it was actually rendered for the purposes of of seeking legal advice you don't have the evidence as to whether or not there was an exception or whether there was a waiver of the privilege how can you get to the the excerpt as it's defined in the briefing without those to what exactly you want us to reverse the district court's ruling which ruling plaintiff respectfully respectfully submits that the excerpt should be stricken from the order because otherwise the order can be used collaterally and it should be stricken from the order because the district court erred in finding attorney client privilege that is correct i mean you did if i'm understanding correctly what you just argued we don't have sufficient understanding of the district court's rationales to each of the documents because of the sort of blanket analysis would remanding to the district court to do a more specific analysis as to which documents the court found were judicial documents which were attorney client privilege and then which needed to get to this crime fraud exactly that wouldn't necessarily change the outcome as to the applicability of the crime fraud exception unless the court changed its mind but it might narrow the universe of documents subject to that determination well plaintiff would argue that it would actually change the outcome because nothing in those seals exhibits is attorney client privileged nothing and if the district court had gone through its analysis required by legal precedent then it would have not come to the conclusion that it had that is presented in the excerpt and what are we am i correct that we are talking about the eight documents that you submitted under seal in an excess of caution subject to a future unsealing motion which you made or are there yet other documents that are at issue it is just what we have defined just what appellant has defined as the disputing disputed exhibits which are the eight documents that you list in your motion in the first place that's the ones we're looking at that is correct i thought there were 10 your honor i apparently am mistaken so yeah i will take your word that there are eight so i'm just saying you know the document that i'm looking at which is your motion has a chart which lists i mean i guess you could say there are 10 because one is exhibit 13 a b and c that's exactly it your honor so you're right there are listed in eight boxes that that chart is what we're yes your honor that is correct all right um thank you i uh i think we understand your your thank you